UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| EDWARD JON PETROFF, | Case No. 2:18-cv-35 |
| Plaintiff, | Hon. Maarten Vermaat |
| v. | U.S. Magistrate Judge |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

## **OPINION**

In October 2013, Edward Jon Petroff fell while at work, breaking several ribs and his collarbone, and collapsing a lung. A few weeks later, he underwent two surgeries to fix the broken bones and have supporting metal plates installed. Petroff then began his recovery. By the next summer, Petroff had made significant progress. In July 2014, one of his surgeons said Petroff had "healed dramatically well" and cleared him to return to his past work, which included sitting for up to eight hours, lifting up to 100 pounds, and using a 90-pound jackhammer. A few months later, in October 2014, the other surgeon said that Petroff was "doing really well" and had full motion and full use of his arm. Nonetheless, in December 2014, Petroff applied for disability. The Social Security Administration rejected his claim in its entirety and Petroff requested a hearing.

The Administrative Law Judge (ALJ) who heard Petroff's case agreed in part with Petroff, ruling that he was entitled to receive disability from October 21, 2013

through October 21, 2014, but also concluding that Petroff's disability ended on October 22, 2014. Petroff now appeals this ruling.

This Court has reviewed the ALJ's decisions and concludes that the ALJ applied the correct legal standards and based her decision on substantial evidence. Accordingly, the ALJ's decision is affirmed.

**Standard of Review**

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*,

735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

**Procedural Posture**

Petroff applied for Social Security disability insurance benefits on December 16, 2014. (PageID.191-197.) In his application, Petroff alleged that he became disabled on October 21, 2013. (PageID.191.) Petroff's application was initially denied, (PageID.91-101), and he subsequently requested an administrative hearing before an ALJ, (PageID.111). The ALJ held a hearing on January 4, 2017, at which Petroff was represented by counsel. (PageID.58-88.)

On March 27, 2017, the ALJ rejected the Social Security Administration's initial denial of benefits and issued a partially-favorable decision, concluding that Petroff became disabled October 21, 2013, but that the disability ended on October 22, 2014. (PageID.39-54.) The ALJ's decision became the agency's final decision on January 12, 2018, when the Appeals Council denied Petroff's request for review. (PageID.24-28.)

Petroff then filed this appeal, seeking judicial review of the agency's final decision denying his request for disability benefits. Both parties consented to proceed before a Magistrate Judge on May 24, 2018. (PageID.739.)

**Background**

Petroff was born in April 1959. (PageID.64.) He is 6'1", weighs 205 pounds, and has a high school education. (PageID.64.) He was previously employed as a highway maintenance worker and foreman at the Michigan Department of Transportation. (PageID.66.) Although the Dictionary of Occupational Titles ("DOT") defines the exertional level of these positions as medium, Petroff performed both positions at a "very heavy exertional level." (PageID.49.)

On October 21, 2013, Petroff fell while at work (PageID.443)[1], fracturing his left clavicle and several ribs, as well as sustaining a collapsed lung. (PageID.340.) He was initially hospitalized for several days at Portage Health, where doctors inserted a chest tube. (PageID.340.) Shortly thereafter, Petroff was seen by his primary physician, Dr. Thomas McConnon, who prescribed Petroff morphine and tramadol for the pain. (PageID.296.) Petroff was then sent to the Mayo Clinic, where Dr. Stephen Sems performed an operative fixation of the left clavicle on November 4, 2013, (PageID.529-530), and Dr. David Morris performed an operative fixation of the

---

[1] The circumstances surrounding Petroff's fall are not entirely clear. One medical record states that Petroff "fell off a utility bay belt at work from about 4 feet up[.]" (PageID.445.) Another medical record states that Petroff was "standing in the bed of a truck using a cleaning device when he fell from the truck and hit the ground." (PageID.448.)

fractured ribs with correction of the deformity on November 11, 2013. (PageID.528). Because of the pain, Petroff could not lie flat and was forced to sleep in a recliner for several months following his fall. (PageID.301.)

According to the medical records, Petroff's condition steadily improved over the next year. As of February 17, 2014, Petroff reported his pain level at 3 or 4 out of 10. (PageID.507.) As of February 24, 2014, Petroff reported that he was going to physical therapy twice per week and doing exercises at home. (PageID.307, 507.) As of April 30, 2014, Petroff was "able to drive, get dressed, etc. and [was] not requiring assistance with activities of daily living any longer." (PageID.314.) As of June 2, 2014, Petroff was lifting 60 pounds during physical therapy, but Petroff also believed that lifting this amount of weight caused him pain. (PageID.317.) On July 25, 2014, Dr. Morris fully cleared Petroff to return to his position as a highway maintenance worker with respect to his rib injuries. (PageID.509.) Dr. Morris believed that Petroff could sit up to eight hours, lift 100 pounds, traverse rough terrain, and use a 90-pound jackhammer. (PageID.509.) Similarly, on October 20, 2014, Dr. Morris stated: "From my standpoint there should be no restrictions for the patient's work or for any future procedures." (PageID.508.)

Although Petroff's condition improved, he also continued to complain of discomfort and pain. For example, on July 1, 2014, Petroff felt that his improvement from physical therapy had "plateaued" and reported hand numbness. (PageID.319.) Despite Petroff's complaints, Dr. McConnon refused to prescribe Petroff any more morphine or any other narcotic pain medication. (PageID.319.) On August 7, 2014,

Petroff complained of left clavicle pain and wanted the metal plate attached to his clavicle removed. (PageID.322.) Dr. McConnon's physical examination of Petroff revealed no significant abnormalities other than tenderness. (PageID.323.) Following this examination, Dr. McConnon noted that he saw "no particular benefit to removing the hardware from the left clavicle." (PageID.323.)

On October 21, 2014, Dr. Sems found that Petroff was "doing really well." (PageID.512.) Petroff reported that left clavicle pain was at 3 out of 10, and that he had full motion and full use of his arm. (PageID.512.) Petroff complained that he felt pain when he went hiking with a backpack. (PageID.512.) X-rays showed that his clavicle fracture had fully healed and that the hardware was stable with no signs of loosening. (PageID.512.) Nonetheless, Petroff requested to have the hardware removed. (PageID.512.) The following week, Petroff had surgery to remove the hardware.

On February 16, 2015, Petroff had a worker's compensation follow-up appointment with Dr. McConnon. (PageID.546.) At this appointment, Petroff told Dr. McConnon that he could lift 10 pounds above his head and carry 50 pounds for a short distance, but both of these activities caused him pain in his ribs. (PageID.546.) Dr. McConnon noted the reports from the Mayo Clinic had "cleared him to return to work in regards to his rib injuries." (PageID.546.) Dr. McConnon then conducted a brief physical examination of Petroff, which revealed normal findings with the exception of "tenderness" by the clavicle and "along the rib fractures where the metal plates are." (PageID.547.) Relying on Petroff's subjective complaints, Dr. McConnon wrote:

> [It] [i]s my opinion that [at] this time he has reached his maximum recovery. I do not feel he is able to do his previous level of activity in his previous job. I will not be ordering any further physical therapy. If Worker's Compensation wishes a functional capacity, that would be their choice. I cannot see how he'll be instructed, as at the present time as outlined above he can only have a 45 minute session of physical therapy, and then needs 1-2 days off to recover.

(PageID.547-547.)

## ALJ's Decision

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared as not disabled. 20 C.F.R § 404.1520(a)(4).

The claimant has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In addition, when evaluating whether the claimant's disability has ended, the ALJ must employ an eight-step sequential analysis. *See* 20 C.F.R. § 404.1594(f)(1-8). At step one, the ALJ examines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments which meets or equals the severity of a listed impairment. 20 C.F.R. § 404.1594(f)(2). At step three, the ALJ determines whether the claimant has experienced any medical improvement. 20 C.F.R. § 404.1594(f)(3). "Medical improvement" is defined as any decrease in the medical severity of the claimant's previously disabling impairments. 20 C.F.R. § 404.1594(b)(1). If the answer is yes, the ALJ proceeds to step four. If the answer is no, the ALJ skips step four and proceeds to step five. At step four, if there has been a medical improvement, the ALJ determines whether the medical improvement is related to the claimant's ability to perform work. 20 C.F.R. § 404.1594(f)(4). If the answer is no, the ALJ proceeds to step five. If the answer is yes, the ALJ proceeds to step six. At step five, the ALJ considers whether any exceptions to the medical improvement standard apply. 20 C.F.R. § 404.1594(f)(5). At step six, assuming the

medical improvement is related to the claimant's ability to work or an exception applies, the ALJ determines whether the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). At step seven, the ALJ assesses the claimant's RFC to determine whether he or she can perform past relevant work experience. 20 C.F.R. § 404.1594(f)(7). At step eight, the ALJ determines whether, given the claimant's RFC, age, education, and past experience, the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1594(f)(8). "There is no presumption of continuing disability." *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994). However, the "ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.*

Here, the ALJ first applied the five-step analysis followed by the eight-step analysis. The parties do not dispute that the ALJ applied the proper procedural steps in her opinion. The Court also finds that the ALJ, in her thorough 15-page opinion, applied the correct procedural steps.

With respect to the five-step analysis, the ALJ found that, beginning on October 21, 2013, Petroff had the following several severe impairments: "multiple left side upper body fractures with traumatic pneumothorax and status post-surgical fixation of ribs and of left clavicle, surgical correction of deformity, and obesity[.]" (PageID.43.) The ALJ then detailed Petroff's medical records and concluded that, from October 21, 2013 through October 21, 2014, Petroff had the RFC to perform sedentary work with the following limitations:

> [T]he claimant could never climb ladders, ropes or scaffolds. The claimant could never work at unprotected heights or around dangerous moving machinery. The claimant was able to occasionally crawl. The claimant could occasionally push or pull with the left upper extremity and occasionally reach overhead with the left upper extremity. The claimant could not drive a vehicle as a job task. The claimant needed to avoid concentrated exposure to extreme cold, humidity and wetness. The claimant could frequently, but not constantly, engage in neck rotation to the right.

(PageID.45.) Based on Petroff's RFC, age, education, and work experience, as well as the testimony from the vocational expert at the hearing, the ALJ determined that "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed." (PageID.50.)

After initially finding that Petroff was disabled, the ALJ then addressed whether the disability had ended. Based on his age, education, and previous work experience, Petroff's disability would have continued if the ALJ found that Petroff could perform only light work. 20 C.F.R. § 404, Appendix 2, Subpart P, Table No. 2, Rule 202.06. In other words, Petroff's disability would end only if the ALJ determined that he was capable of performing "medium work." Medium work is defined as lifting up to 50 pounds occasionally and lifting or carrying up to 25 pounds frequently. 20 C.F.R. § 404.1567. The regulations further explain that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and "sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251 (1983).

Relying on Dr. Morris's October 20, 2014 opinion and Petroff's own statements from October 21, 2014, the ALJ determined that medical improvement occurred as of October 22, 2014. (PageID.50.) The ALJ then determined that Petroff had the RFC to perform medium work with the following limitations:

> [T]he claimant should never climb ladders, ropes or scaffolds. The claimant should never work at unprotected heights or around dangerous moving machinery. The claimant can occasionally crawl. The claimant can occasionally push and pull with the left upper extremity and occasionally reach overhead with the left upper extremity. The claimant should not drive a vehicle as a job task. The claimant should avoid concentrated exposure to cold, humidity and wetness. The claimant is able to engage in frequent, but not constant, neck rotation to the right.

(PageID.51.)

Furthermore, the ALJ concluded that Petroff's claimed limitations – an inability to lift more than 50 pounds occasionally and 10 to 15 pounds repetitively, sit for more than 1 hour, stand for more than 20 minutes, and reach overhead with the left upper extremity (PageID.52) – were "not entirely consistent with the medical evidence and other evidence in the record." (PageID.51.) The ALJ noted that the objective medical examinations showed that Petroff had "almost full range of motion in his left shoulder, normal motor strength, no atrophy, good reflexes and occasional tenderness." (PageID.52.) In addition, the ALJ mentioned that Petroff had driven to

Arizona and went hiking. Accordingly, the ALJ concluded that Petroff was capable of "medium work." (PageID.52.)[2]

Next, relying on the testimony of the vocational expert at the hearing, the ALJ found that a person with the same age, education, work experience, and RFC as Petroff would be able to perform jobs that exist in significant numbers in the national economy, such as an order picker (56,800 jobs nationally); dishwasher (345,000 jobs nationally); and dining room attendant (164,000 jobs nationally). (PageID.53.) This conclusion is also not in dispute.

Based on these findings, the ALJ concluded that Petroff's disability ended on October 21, 2014. (PageID.53.)

## Discussion

Petroff argues that the ALJ erred when he failed to afford controlling weight to the February 2015 medical opinion of Dr. Thomas McConnon. Petroff also argues that the ALJ's finding that a medical improvement occurred as of October 22, 2014 is not supported by substantial evidence. The Court addresses each argument in turn.

I.  **Whether the ALJ Properly Considered Dr. McConnon's February 2015 Treatment Note**

---

[2] The Court further notes that the ALJ's finding that Petroff can perform medium work is supported by the medical opinion of Dr. Morris, who cleared Petroff to lift up to 100 pounds and use a 90-pound jackhammer. This finding is also supported by the October 2014 treatment note of Dr. Sems, who determined that Petroff had full range and full use of his left arm and placed no restrictions on Petroff.

At an appointment on February 16, 2015,[3] Dr. McConnon wrote that Petroff could not return to past work. (PageID.546.) During this appointment, Petroff told Dr. McConnon that he could lift 10 pounds above his head and carry 50 pounds for a short distance, but both of these activities caused him to experience pain in his ribs. (PageID.546.) Petroff also said that he had been doing 45-minute sessions of physical therapy 2-3 times a week but that he needs to take it easy the day after the sessions because he is in so much pain. (PageID.546.) Dr. McConnon noted that he had the reports from the Mayo Clinic, which had "cleared him to return to work in regards to his rib injuries." (PageID.546.) Dr. McConnon then conducted a brief physical examination of Petroff, which revealed largely normal findings with the exception of "tenderness" by the clavicle and "along the rib fractures where the metal plates are." (PageID.547.) Following the appointment, Dr. McConnon wrote:

> [It] [i]s my opinion that [at] this time he has reached his maximum recovery. I do not feel he is able to do his previous level of activity in his previous job. I will not be ordering any further physical therapy. If Worker's Compensation wishes a functional capacity, that would be their choice. I cannot see how he'll be instructed, as at the present time as outlined above he can only have a 45 minute session of physical therapy, and then needs 1-2 days off to recover.

(PageID.547-547.)

---

[3] The appointment was on February 16, 2015 and the medical record was signed by Dr. McConnon on February 18, 2015.

In the decision, the ALJ adequately discussed the treatment provided by Dr. McConnon. (PageID.46, 49, 51.) With respect to the February 2015 treatment note, the ALJ stated:

> On February 18, 2015, Dr. McConnon stated that he did not believe that the claimant could return to his past work. However, he specifically noted that no functional capacity statement was being provided (Exhibit 5F/10-11). Indeed, no function by function statement was provided by Dr. McConnon at that time. However, as will be discussed below, the record evidence is sufficient to show limitations that preclude the claimant's return to past work.

(PageID.49.)

Generally, a treating physician's medical opinion is entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). If an ALJ affords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for discounting the opinion. *Id.* at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

The first issue that must be addressed is whether Dr. McConnon's treatment note is considered a medical opinion. The Social Security regulations define "medical

opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The Sixth Circuit has stated that "[a] doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule." *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009).

In this case, Dr. McConnon's statement that Petroff could not perform past work is overwhelmingly based on Petroff's subjective complaints. In reaching his opinion, Dr. McConnon exclusively relied on Petroff's own statements that he could only do a 45-minute session of physical therapy but then would need 1 to 2 days off. The actual physical examination revealed no abnormalities except for some tenderness. The surgical wounds were well healed. The clavicle fracture was stable. Petroff had "[g]ood range of motion of the chest wall with arm movements." Despite these objective findings, Dr. McConnon's treatment note exclusively relied on the limitations that Petroff stated. And, the Court notes that, only a couple months earlier, Dr. McConnon wrote that Petroff had a tendency to exaggerate most of his symptoms. (PageID.397.) Furthermore, as mentioned above, the ALJ concluded that Petroff's claims were "not entirely consistent with the medical evidence and other evidence in the record." (PageID.51.)

In addition, even assuming that Dr. McConnon's treatment note is a medical opinion, the failure of affording the opinion any weight is harmless. The Sixth Circuit

has recognized that a violation of the "good reasons" rule could constitute harmless error where the Commissioner made findings consistent with the treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

Here, the ALJ's decision is consistent with Dr. McConnon's overall opinion. As mentioned above, Dr. McConnon's overall opinion was that Petroff could not return to past work. The opinion was offered following a worker's compensation follow-up appointment. Although the ALJ noted the deficiencies in Dr. McConnon's purported opinion — that "no functional statement was being provided" and that "no function-by-function statement was provided" — the ALJ determined that the evidence clearly established that Petroff could not return to past work. Because the ALJ's decision is consistent with Dr. McConnon's purported opinion that Petroff could not return to past work, the Court finds that ALJ did not commit a reversible error.

## II.   Whether the ALJ's Finding of Medical Improvement Is Supported By Substantial Evidence

Petroff also argues that the ALJ erred when she found that a medical improvement occurred as of October 22, 2014. Petroff states, "[s]ince there is no substantial evidence of medical improvement, as demonstrated by the Statement of Facts and the previous section of the Argument of this Brief, then the ALJ's Decision after the point at which it found [Petroff] to have demonstrated medical improvement cannot be sustained." (PageID.754.) However, Petroff does not offer any meaningful analysis on this point. Instead, Petroff conclusory states that the ALJ failed to meet

the medical improvement standard in *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284 (6th Cir. 1994).

To the extent Petroff is asking the Court to reexamine the entire record and reweigh all the evidence to determine whether a medical improvement occurred, that is not the appropriate standard. *See, e.g.*, *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm [the court's] decision because substantial evidence supports it."); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

In addition, contrary to Petroff's argument, the ALJ's finding of a medical improvement is supported by substantial evidence. As the ALJ explained, Petroff's condition steadily improved in the year following his fall. As early as April 2014, Petroff was capable of driving, dressing himself, and did not require any assistance with activities of daily living. On July 25, 2014, Dr. Morris opined that Petroff could return to his past work, which required him to use a 90-pound jackhammer. And on October 21, 2014, Dr. Sems found that Petroff was doing "really well" and exhibited full motion of his arm and full use of his arm. Although Petroff had surgery to remove the metal hardware shortly after October 21, 2014, the surgery was solely for comfort and had no impact on Petroff's restrictions. In fact, Dr. McConnon did not think that there would be any benefit of removing the hardware. Accordingly, the Court finds

that there was substantial evidence to support the ALJ's finding that Petroff medically improved as of October 22, 2014.

## Conclusion

The Court is sympathetic toward Petroff as he suffered a serious and undoubtedly painful injury that required multiple surgeries and a long recovery. A review of the record, however, indicates that the ALJ conducted a procedurally correct review of the Social Security Administration's denial of Petroff's disability claim. The ALJ's findings included consideration of Dr. McConnon's February 2015 treatment note. The ALJ's conclusions (a) that Petroff's medical condition had improved as of October 22, 2014, (b) that Petroff's residual functional capacity allowed him to perform "medium work," and (c) that there were significant numbers of jobs he could perform in the national economy were supported by substantial evidence. Thus, the Court finds that there is substantial evidence to support the Commissioner's decision that Petroff was not disabled as of October 22, 2014. Accordingly, the decision of the Commissioner is AFFIRMED and Petroff's request for relief is DENIED. A separate order shall issue.

Dated: March 29, 2019

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE